IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROWN HELICOPTER, INC., UNITED AERONAUTICAL CORP., ASSOCIATED AIRCRAFT MFG. & SALES, INC., DIXIE AIR PARTS SUPPLY, INC., FIREHAWK HELICOPTERS , INC., d/b/a BRAINERD HELICOPTERS, and ALAMO AIRCRAFT, LTD., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Case No. 06CV00840 (JR) ) ) ) ) ) ) ) ) |

## DECLARATION OF PETER J. BEAULIEU

I, Peter J. Beaulieu, declare as follows:

1.  I am currently the Vice President of Associated Aircraft Manufacturing & Sales, Inc., ("Associated") and have held that position since 1979. Associated is located at 784 N.W. 57th Court, Fort Lauderdale, Florida 33309.

2.  I am also the President of the National Association of Aircraft Communication & Suppliers ("NAACS"). The NAACS is an organization of approximately 100 small businesses representing a broad spectrum of the aviation community. NAACS members include: (1) spare parts distributors who supply aircraft and electronic parts to the U.S. and friendly foreign military services; (b) operators who use military surplus aircraft in

industrial and commercial lifting operations and logging; and (c) aviation repair stations and facilities who install military surplus parts. The common trait shared by NAACS members is that they rely on military surplus aircraft parts. Many of them routinely purchase military surplus parts directly from DoD's Defense Reutilization and Marketing Service and Government Liquidation LLC (GL).

3.      I have personal knowledge of the assertions set forth below based on my experience in working for Associated and my experience as a member of NAACS.

4.      Associated is in the business of purchasing surplus government property, which includes the exact same types of military aircraft components at issue in this matter. Associated then sells parts to qualified entities for various uses.

5.      Associated's clients include companies which use the same types of aircraft at issue in the forest fire suppression, logging and construction industries.

6.      In addition, Associated has sold parts to friendly nations, when approved by the United States government, to help preserve those nations' national security.

7.      Associated has been purchasing aircraft components from the United States government since 1953. Associated employs 50 individuals and approximately one-third of our business relates to military surplus aircraft parts.

8.   Additionally, over the past 50 years, Associated has purchased C-130, A-4, S-3, F-14, H-53, T34 and C-141 parts.

9.   As mentioned above, these sales provide Associated with critical parts for use in various industries and for meeting the needs of friendly nations which use these aircraft for their own security and routinely need parts to keep them usable.

10.  The United States government also purchases parts from Associated and other surplus parts dealers when the government has a shortage of such parts on hand.  This results from the fact that the government cannot retain all of its surplus material, but at times (often many years later) it will have a need for replacement parts it no longer has in stock.

11.  Because Associated and other surplus parts dealers retain such parts, the government saves significant expenses by purchasing these items from surplus dealers rather than having to obtain them from the original equipment manufacturers.  While the federal government has entered into contracts with many Department of Defense government contractors which are original equipment manufacturers, called "Long-Term Contracts", the federal government pays these defense contractors significantly more money than would be paid for purchasing parts from military surplus dealers.

12.   The aircraft at issue in this matter are in limited supply and their overall availability is critical to Associated's continued viability, as well as being critical to those

governments and companies which purchase these parts from Associated.

13. It is my understanding that the Department of Defense, through the Defense Reutilization and Marketing Service (DRMS), has issued a contract which allows GL to conduct sales of surplus parts pursuant to online bidding processes. I have reviewed a copy of the notice of the sale by GL of the aircraft at issue in this matter.

14. It is my experience that, as part of the process of selling surplus property, DRMS applies a demilitarization code (also referred to as the "DEMIL Code") to components of surplus property. These codes, which are set forth in the DOD Demilitarization and Trade Security Control Manual, include codes "A" and "B," which indicate that a part may be sold "as is" as surplus for commercial resale and does not need to be demilitarized.

15. The C-130, C-141 and H-53 are not items which are properly assigned Code C or D under the DEMIL Code. Upon being supplied to the federal government by their manufacturers, these aircraft are assigned Code B under the DEMIL Code. If the C-130, C-141 and H-53 are subsequently modified by the government through the addition of items which are given Code C and/or D under the DEMIL Code, the overall aircraft would be given Code C, thus requiring the removal and destruction of just those added items upon any subsequent sale or disposal of the aircraft. Once these items have been removed, the aircraft revert to their original Code B.

16.     As demonstrated by DRMS's past sales of the very same aircraft at issue here and consistent with my statements above, often a military aircraft can be demilitarized by destroying certain specific components of the aircraft without the entire aircraft being destroyed.

17.     While of varying individual significance, overall C-130, C-141, T-34, A-4 and H-53 aircraft constitute a substantial portion of the military surplus aircraft resale industry. By effectively cutting off the supply of the components from such aircraft with its blanket destruction policy, the government has permanently closed down the key supply market for these parts. This closure will have significant and detrimental harm on us as well as other similar resellers.

18.     The government's action also will cause substantial harm to our clients which rely upon the parts provided by us to keep aircraft in active operation in the various civilian industries in which they are used.

19.     It has been my experience that DRMS, whether due to staffing shortages or simply error, has often incorrectly assigned a DEMIL code to aircraft components which required the destruction of such components even though proper coding would not have required their destruction. This incorrect coding has resulted in the loss of significant revenues to the federal government, as well as caused substantial harm to Associated and other surplus military aircraft dealers, including members of the NAACS.

20.     Based on my experience, the cost of removing parts and components which may have a code which requires them to be destroyed with from military aircraft such as C-130s and C-141s is not extensive.  In addition, Associated would be willing to pay for the cost of removal of any such components as part of its obligation under a sale if assuming such cost was the only means by which Associated could acquire the aircraft components which otherwise should not be destroyed.

21.     Most of the components on the aircraft which are included in the Government Liquidation sale at issue in this matter contain parts and components which should be coded as "A" or "B" under the DEMIL Code.  This coding means that the parts can be sold for commercial resale.

22.     If parts from these aircraft were sold for subsequent resale, they would result in significantly more revenue to the government than by selling them for their scrap value only.

23.     Associated has purchased these same types of aircraft components and parts from the government in the past.  If the aircraft being sold by GL in the sale at issue were offered for sale and the parts could be resold, rather than the aircraft being destroyed, Associated would bid on such a sale.

24.     However, DRMS is requiring that these aircraft be completely destroyed by the purchaser as a condition of the sale and used solely for scrap purposes.  The destruction is

to be accomplished by physically shredding the aircraft using a commercial shredder. The shredding will permanently destroy the aircraft's use for purposes of spare parts or other useable commercial purposes.

I declare under penalty of perjury that the foregoing is true and correct.

_6-7-06_
Date

_[signature]_
Peter J. Beaulieu