IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BROWN HELICOPTER, INC., UNITED                    )
AERONAUTICAL CORP., ASSOCIATED                    )
AIRCRAFT MFG. & SALES, INC., DIXIE                )
AIR PARTS SUPPLY, INC.,                           )
FIREHAWK HELICOPTERS , INC.,                      )
d/b/a BRAINERD HELICOPTERS, and                   )
ALAMO AIRCRAFT, LTD.,                             )
                                                  ) Case No.  06CV00840 (JR)
            Plaintiffs,                            )
     v.                                            )
                                                  )
UNITED STATES DEPARTMENT OF DEFENSE,              )
                                                  )
            Defendant.                             )
_____)


**<u>THIRD DECLARATION OF JOHN H. LANE</u>**


I, John H. Lane, declare as follows:


1.      I am currently the Chief Financial Officer and Corporate Secretary of Brown

Helicopters, Inc. ("Brown") and have held that position since 2000. Brown is located at

10100 Aileron Avenue, Pensacola, Florida.


2.      I have personal knowledge of the assertions set forth below based on my

experience in working for Brown.


3.      Brown is in the business of purchasing surplus government property, which

includes the exact same types of components which are included on the aircraft at issue in

EXHIBIT 3

this matter.  Brown then sells parts from those aircraft to qualified entities for various

uses.

4.      The government's apparent decision to require the wholesale destruction of

aircraft which otherwise can be sold for commercial use has required us to revise our

business plans given the significant impact which this decision will have on the military

surplus aircraft market in which we participate.

5.       The government's blanket decision to require the wholesale destruction of such

commercially useable aircraft such as C-130s, H-53s and T-34s, which otherwise can be

sold for commercial use with proper demilitarization of any combat-related components,

will be a substantial blow to our ability to continue operating given that these aircraft are

crucial to our existence as surplus parts dealer.

6.      With regard to chaff dispensing equipment and warning indicators on H-53

helicopters, a commercial purchaser of this aircraft would remove these items even if

they were left on the aircraft at the time of sale and the purchaser was not required by the

government to remove them.  This is because the money that a commercial helicopter

operator can earn depends on how much weight it can carry.  Because this equipment is

heavy and is not necessary for any commercial operations, it will be removed by the

operator.

7.      In my estimation, it would take approximately 10-20 hours to remove each chaff

EXHIBIT 3

dispenser from a H-53 aircraft and a couple hours to remove each warning indicator. I have reviewed Mr. Robert Rohde's estimate in his declaration that it would take 240-280 hours to demilitarize an H-53 aircraft which included these components, and I disagree with his estimates.

8.      I also recall that several CH-53 aircraft, which are essentially the same as H-53 aircraft, were purchased several years ago by a company that I am familiar with and the company paid approximately $1 million for the aircraft along with some spare parts.

9.      In addition, a C-130 aircraft along with the four propellers and engines is worth about $250,000-500,000. Where the records for the aircraft are provided, Brown would be willing to incur the cost of any demilitarization required in order to be able to purchase these items for this price.

10.      I am also aware of an incident that occurred approximately three years ago where an F-18 aircraft was advertised on the eBay internet auction website. While the photograph on the website was of a new F-18 in flight, we determined that the actual sale item was a stripped down, demilitarized F-18 fuselage located in the desert. The fuselage had no cockpit, no engines and no wings.

11.       Given that there are approximately over 1,000 C-130 aircraft which are currently in use and being operated commercially and by friendly foreign nations, the government's decision to require the wholesale destruction of C-130 aircraft will have a

EXHIBIT 3

significant impact on the spare parts market for these aircraft, as well as having a

detrimental impact on the ability of these other entities to keep these aircraft in operation.

12.    Attached hereto as Attachment A are excerpts from Chapter 4 of the Defense

Materiel Disposition Manual, DoD 4160.21-M.

I declare under penalty of perjury that the foregoing is true and correct.

_6-7-06_____

Date

_____

John H. Lane

4                                      EXHIBIT 3

DoD 4160.21-M

# CHAPTER 4

## PROPERTY REQUIRING SPECIAL PROCESSING

A.  GENERAL.  Some property, because of its peculiar nature, its potential influence on public health, safety, the environment, security, or private industry, must be disposed of in other than a normal fashion.  This chapter sets forth those items or categories of  property, explains their peculiarities and furnishes guidance for their disposal.  Environmentally regulated and hazardous commodities are addressed in Chapter 10, Environmentally Regulated and Hazardous Property, Attachment 1, Special Turn-In Requirements.

**NOTE**: The following categories were removed from this chapter and moved to Chapter 10, Environmentally Regulated Property, Attachment 1:

> Asbestos
> Batteries
> Chemical Defense Equipment
> Composite Fiber Material
> Compressed Gas Cylinders
> Containers
> Fluorescent Lamps
> Hospital Generated Infectious Wastes
> Lab Packs for Small Quantity Chemical Items
> Liquid Rocket Propellants
> Polychlorinated Biphenyl
> Protective Masks and Filters (Gas Masks)
> Spill Residues

B.  LIST OF ITEMS REQUIRING SPECIAL PROCESSING.  Applicable to excess, surplus, and, where applicable, FEPP.

1.  **Agricultural Commodities, Foods Processed therefrom, and Cotton and Woolen Goods**

   a.  Surplus agricultural commodities, surplus foods processed from agricultural commodities, and surplus cotton or woolen goods may be processed with no special handling when:

      (1)  The quantity of the commodity or product in any one location has an acquisition cost of $5000 or below.

      (2)  The commodity or product must be disposed of immediately to prevent spoilage.

4-1

**DoD 4160.21-M**

b.  When surplus agricultural commodities, surplus foods processed from agricultural commodities, and surplus cotton or woolen goods meet the conditions specified below, DRMS shall obtain from the Administrator, Agricultural Stabilization and Conservation Service, Department of Agriculture, 1400 Independence Ave. SW, Washington,  DC 20013, a determination on how best to proceed with the proposed transfer or sale.

(1)  The quantity of the commodity or product in any one location has an acquisition cost in excess of $5,000.

(2)  The commodity or product does not require immediate disposal to prevent spoilage.

(3)  The quantity to be sold during any month has an acquisition cost in excess of:

(a)  Raw cotton, wheat and other grains, flour, leaf tobacco, and cotton and woolen goods--$300,000.

(b)  Meat, poultry and poultry products, peanuts and other  fats and oil--$50,000.

(c)  All other agricultural commodities and foods processed  from them--$25,000.

c.  When quantities of surplus agriculture commodities, surplus foods processed from them, and surplus cotton or woolen goods, exceed the amounts specified in subparagraph B1b, DRMS shall obtain from the Department of Agriculture Farm Service Agency, P.O. Box 2415, Washington, DC  20013-2415:

(1)  A determination, with pertinent instructions, that the  commodities or products should be transferred to the Department of Agriculture for disposition as provided by the Act.

(2)  A statement setting forth the conditions and prices which  should be used by the holding agency in the disposition of the commodities  or products.

d.  Transfers, if directed, shall be made without charge to the Department of Agriculture.

2. **Aircraft**

a.  General

(1)  DRMOs shall not screen or report aircraft.  The owning Military Service shall screen aircraft with the other Military Services and DoD activities, and then report excess to GSA Region 9 for Federal civil agency and donation screening.

DoD 4160.21-M

(2)  This policy applies to all aircraft; however, processing procedures may vary for aircraft located at AMARC, Davis Monthan AFB, Arizona.

(3)  Categories of aircraft used in this paragraph are defined as follows:

(a)  Category "A."  Aircraft authorized for sale and exchange for commercial use. This includes fixed wing (FSC 1510) and rotary wing (FSC 1520) aircraft which do not require DEMIL as defined by DoD 4160.21-M-1, and have been identified by the Military Services as available for commercial sale or exchange as in Attachment 1, this chapter.

(b)  Category "B."  Aircraft used for ground instructional and static display purposes.  These aircraft generally have not been maintained to airworthiness standards, precluding their use as a flyable aircraft.

(c)  Category "C."  Aircraft that are combat configured as determined by the Services.

b.  Aircraft with Commercial Flight Application.  This section applies to Category "A" aircraft which may be sold or exchanged for commercial use as determined by the Military Services.

(1)  Screening of Category "A" aircraft

(a)  DoD Screening.  The Military Services shall screen with other Service and DoD activities to determine needs for complete aircraft or parts reclamation.  Screening shall be in written form agreeable to the Military Services and other DoD activities.  This screening shall be to determine needs for complete aircraft or parts reclamation.

(b)  GSA Screening.  The Military Services shall report excess aircraft to GSA on Standard Form (SF) 120, Report of Excess Personal Property, for Federal and donation screening for the period of time prescribed by FPMR 101-43 and 101-44.  The SF120 shall list all major systems (such as engine, electronics) missing from the aircraft at the time of reporting.  The report shall also indicate whether the data plate, log books and historical/modification records are available, and if additional parts will be removed from the aircraft at the time of release to the transferee.  Data plates for aircraft transferred or donated for non-flight purposes shall be removed prior to issuance.

(2)  Priority for allocation shall be:

(a)  Issue to another Military Service as complete aircraft.

4-3

**DoD 4160.21-M**

      (b)  Issue to another DoD activity (includes Civil Air Patrol [CAP]) as complete aircraft.

      (c)  Use of aircraft for parts reclamation to satisfy DoD supply system needs with the needs of the owning Military Service taking precedence.

      (d)  Issue of excess aircraft to Federal & State law enforcement activities (see Chapter 5, Attachment 1, paragraph 2).

      (e)  Issue for Security Assistance needs.

      (f)  Transfer of excess aircraft to a Federal civil agency through GSA.

      (g)  Donation of surplus aircraft to authorized recipients through GSA.

**NOTE**:  GSA may, on a case-by-case basis, request transfer of an aircraft to a Federal civil agency for continued flight use prior to issues under (c) above.  The request shall specify the recipient agency and intended use.  Such requests shall, when feasible, be honored by the owning Military Service instead of parts reclamation.

    (3)  Issues

      (a)  Issues to CAP.  If flyable non-AMARC aircraft are selected by HQ CAP-USAF for issue to CAP, the following  procedures apply:

        <u>1</u>  The losing Military Service shall issue the aircraft to the AFX account specified by HQ CAP-USAF, ensuring that data plates and all available historical/modification records accompany the aircraft.

        <u>2</u>  Should CAP-USAF elect to use the aircraft for reclamation of parts, CAP should contact the owning Service for arrangements concerning reclamation of parts.  Should CAP elect not to reclaim parts and components from the aircraft, HQ CAP-USAF shall make arrangements for issue and delivery of the aircraft, data plates, and historical/modification records to AMARC.  CAP aircraft received at AMARC shall be reported to GSA for use by Federal civil agencies and by authorized donees.

      (b)  Issues to Law Enforcement Activities (See Chapter 5, Attachment 1, paragraph 2.)  The DLA Law Enforcement Support Office (LESO) shall prioritize Federal & State requests, in coordination with the Deputy Assistant Secretary for Drug Law Enforcement Policy (DASD [DEP&S]), the owning Military Service, DoJ, and the Office of National Drug Control Policy (ONDCP).

DoD 4160.21-M

(c)  Issues to Federal civilian agencies and donation customers. The Military Services shall release aircraft upon receipt of fully executed issue documents, SF 122, Transfer Order-Excess Personal Property, or SF 123, Transfer Order-Surplus Personal Property.  The issue document shall indicate the name of the recipient and the intended use of the aircraft.  Data plates and historical, modification & maintenance records shall be furnished along with the aircraft to the federal civil agency or authorized donee.  For aircraft issued or donated for ground use only, the data plates shall be removed prior to release to the authorized recipient.

(4)  DRMS Processing

(a)  Prior to the transfer of accountability to the DRMS, the Military Services will ensure that all required screening has been completed. The transfer to a DRMO shall be accomplished by using an individual DD Form 1348-1A for each aircraft. The generator shall include on the DTID, the adjusted dollar value of the aircraft, a list of parts or components that have been removed, and an indication if the data plates are/are not available on the DTID.  Data plates and records may not be tampered with nor removed before or at the time of turn-in.

(b)  All available aircraft log books, historical/modification/ maintenance records shall be transferred to the DRMO with the aircraft.  If these records are not available, a statement to this effect shall be included on the DTID.

(c)  DRMOs shall safeguard the historical/modification/maintenance records at all times prior to final disposition.

(d)  DRMOs shall offer aircraft for sale on an "each" basis except those aircraft that are completely in scrap condition or that require airframe DEMIL.  The sale offering shall include, at a minimum, the following information, if available:

1  Military Model-Design-Series (MDS) and the manufacturer's model (when available) of the aircraft; serial number(s); total airframe and engine time; total engine time since last overhaul; time since last Inspection, Repair As Necessary (IRAN); other pertinent information considered necessary to properly advertise the aircraft to the buying public.

2  Special sale condition "Federal Aviation Administration Flight Certification" shall be included in each sale solicitation. This sale condition requires the purchaser to comply with all Federal Aviation Administration (FAA) regulations concerning the airworthiness certifications for aircraft flown in civil operations, as well as certain disclaimers and liability issues.

3  When appropriate, a statement that it is the responsibility of the purchaser to obtain a one-time ferry permit from FAA if flight from the DRMO holding area is

4-5

DoD 4160.21-M

contemplated.  Those purchasers desiring to obtain special flight permits should contact their local FAA Flight Standards, General Aviation, or Engineering and Manufacturing District Offices for registration applications and for information relative to issuance of these permits.

     <u>4</u>  A statement that indicates the purchaser is responsible to make arrangements with FAA for all inspections needed to obtain airworthiness certification.  FAA provides guidance and instructions to establish eligibility for civilian airworthiness certification for surplus Military aircraft and aircraft assembled from spare and surplus spare parts. Before an Airworthiness Certificate is issued, the assembled aircraft must be in conformity with the approved data forming the basis for that FAA-type certificate. The responsibility to satisfy FAA requirements lies entirely with the purchaser.

     <u>5</u>  The sale solicitation shall contain a statement to advise interested bidders that they may review a copy of DoT, FAA Advisory Circular, AC No. 21-13, "Standard Airworthiness Certification of Surplus Military Aircraft and Aircraft Built From Spare and Surplus Parts", and AC No. 20-96, "Surplus Military Aircraft - A Briefing for Perspective Buyers" at the FAA field district office or obtain a free copy from:

> U.S. Department of Transportation
> Subsequent Distribution Office
> Ardmore East Business Center
> 3341 Q 75th Ave
> Landover, MD  20785

     <u>6</u>  Transfer of Title of Government owned aircraft to a purchaser must be evidenced by a Bill of Sale.  The acknowledgment of the Bill of Sale must be executed by a duly appointed Notary Public or the SCO.  Data plate and historical/modification records shall be furnished to the purchaser.

     <u>7</u>  End Use Certificate (EUC).  Sale of aircraft shall be accomplished only after the bidder has filed an EUC with the SCO.  The EUC shall be included in every sale solicitation, completed by the bidder, and submitted with the bid, and a copy retained in the pertinent sales office.

     <u>8</u>  Sale solicitations shall provide for the purchaser to remove, destroy, or obliterate distinctive markings on aircraft.

   c.  Aircraft Having No Established Commercial Flight Application

     (1)  Category "B" aircraft

4-6

DoD 4160.21-M

(a)  Category "B" aircraft have no commercial flight application based upon their safety characteristics.  Generally, they have been subjected to extensive assembly and disassembly procedures for ground training purposes, or subjected to repeated burning for fire-fighting training.

(b)  The owning Military Services shall be responsible for screening of Category "B" aircraft in accordance with paragraph B(1)(a).  Such aircraft shall be reported to GSA for Federal and donation screening in accordance with B(1)(b).  Category "B" aircraft offered, transferred, or donated, shall be identified as suitable for ground use only, such as static display or ground instructional training.

(c)  Aircraft historical/modification/maintenance records for life-limited and/or Flight Safety Critical Aircraft Parts (FSCAP) parts/components may accompany the aircraft on transfer, donation, and sales actions.  However, data plates shall be removed and destroyed by the military service generating activity and the data plate destruction recorded on the DTID.

(d)  DRMOs may offer Category "B" aircraft for sale for ground use only or as scrap.  Category "B" aircraft of a type/model not listed in Attachment 1 of this chapter (Category "A") will also require DEMIL of the airframe.  If applicable, sales terms and conditions containing DEMIL instructions set forth in DoD 4160.21-M-1 shall be included in the sale solicitation and DEMIL shall be performed as a condition of sale.  Sales proceeds from aircraft scrap as a result of DEMIL are not eligible for the RRRP.

A note, substantially as follows, shall be inserted in the item description:

"This aircraft has been subjected to abnormal assembly and disassembly of structural and/or other components in ground instructional training of Military personnel, and is unsafe for flight.  It is being offered for sale for ground use only, e.g., static display or ground training.  No Bill of Sale for this aircraft will be furnished the purchaser."

(2)  Category "C" Aircraft

(a)  Category "C" aircraft have no commercial flight application based upon their Military design characteristics, e.g., combat/tactical application.

(b)  The Military Services shall be responsible for reutilization screening of these aircraft.  Excess aircraft shall be reported to GSA for Federal and donation screening in accordance with B(1)(b).  Except in very rare instances, issues to Federal or donation customers will be for ground use only, e.g., static display, ground training, etc.

(c)  DEMIL for Category "C" aircraft

**DoD 4160.21-M**

        1  The Military Services are responsible for the DEMIL of required parts and components that include weapons, armament, military communication items, etc.  Military Services internal procedures for processing complete aircraft for disposal cover these types of DEMIL required items, and generally these items are removed by the Military Services prior to transfer to the DRMO.

        2  The DRMOs are responsible for the DEMIL of the airframe of Category "C" aircraft in accordance with DoD 4160-21-M-1, appendix 4, Category VIII.  All classified and radioactive property shall be removed by the Military Services prior to transfer of Category "C" aircraft to the DRMO.

        (d)  Surplus Military aircraft, as designated in DOD 4160.21-M-1, or Military aircraft which do not appear in Attachment 1, this chapter, must be challenged as to the proper method of DEMIL.  For those aircraft that require DEMIL, the generating activity shall annotate the DTID with the following information:

        1  That DEMIL must be accomplished.

        2  A statement that DEMIL of the aircraft has been, or has not been accomplished.  This statement shall be in the form of a certificate signed by a responsible individual of the military service generating activity as stated in DoD 4160.21-M-1.

        3  A list of any items, parts or components that require DEMIL that remain on the aircraft at the time of turn-in.  This list may be annotated on, or attached to, the DTID.

        (e)  DRMOs shall sell Category "C" aircraft as scrap only, with DEMIL, (if not already accomplished), as a condition of sale.  Historical records and data plates shall be destroyed by the DRMO prior to transfer to the buyer.  Bills of Sale will not be issued for these aircraft.

    d.  Aircraft for Historical Purposes.  Provisions under this section are applicable to donations under the authority of 10 USC 2572, 10 USC 7308, 10 USC 7541 and 10 USC 7545.  Requests for aircraft to be used for historical purposes (museums, static display, etc.) shall be referred to the proper office of the Military Service as outlined in Chapter 6, Donations, Loan or Exchange, paragraph H.  All such requests shall be processed and documented by the Military Service.  Any necessary DEMIL of aircraft before donation shall be accomplished as stated in DoD 4160.21-M-1.

    e.  Aircraft Built from Spare Parts.  There is no prohibition that prevents a purchaser from building or rebuilding a commercial type (Category A) aircraft sold for the recovery of surplus parts.  FAA provides guidance and instructions to establish eligibility for civilian airworthiness

DoD 4160.21-M

certification for surplus Military aircraft and aircraft assembled from surplus spare parts.  Before an Airworthiness Certificate is issued, the assembled aircraft must be in conformity with the approved data forming the basis for that FAA-type certificate.  The responsibility to satisfy FAA requirements lies entirely with the purchaser.

f.  Residue of Wrecked or Damaged Aircraft.  If not feasible to transport to a DRMO, residue of wrecked or damaged aircraft shall be offered for sale (as scrap only) after assurance that any lethal, hazardous, or classified items have been removed and properly disposed.  If DEMIL is necessary, arrangements shall be made for DEMIL to be performed by the purchaser or the U.S. Government, whichever is considered to be most economical.  Because of the remote location of this residue, it may be offered on a "Lot" basis.  Sale solicitations shall state that the U.S. Government does not grant authority to enter upon private property for the purpose of inspection or removal of the residue and that all arrangements of this nature must be made by individuals interested in the purchase.  When the sale of this residue cannot be accomplished after advertising, it shall  be processed for abandonment in accordance with Chapter 8, A/D.  The time required for the public notice of intent to abandon the property in place shall be in addition to the time used to advertise the property for sale.

g.  Foreign Excess Aircraft.  FEPP shall be made available for screening by GSA-approved Federal or state representatives for possible return to the U.S. for federal transfer or donation.  Overseas DRMOs (except Panama) who receive aircraft shall, regardless of condition, report such aircraft to DRMS International for disposition instructions.

3.  **Ammunition, Explosives, and Dangerous Articles (AEDA) (RESERVED)**
(Contact applicable Military Service representative, chapter 2, attachment1.)

4.  **Animals and Animal Enclosures**

a.  Live animals which become unsuitable for military use shall normally be euthanized by proper authorities under the  following conditions:

(1)  To terminate suffering from diseases, injury, or permanent  physical disability.

(2)  To prevent spread of contagious disease.

(3)  When they are not fit to work because of incurable disease.

(4)  When they are fractious, vicious, or unmanageable.

b.  Live animals (except sentry and scout dogs)  that become excess to military needs, or which become unsuitable for military use for reasons not listed in subparagraph B4a may be disposed of by:

4-9

DoD 4160.21-M

(4)  Ambulances, Modular.  Ambulances manufactured by Southern Ambulance Builders, Inc. (NSN 2310-01-170-6843 and 2310-01-171-4747) must be mutilated by the generator prior to turn-in unless arrangements are made with HQ DRMS.   Mutilation is for safety concerns primarily due to potential for fire.

(5)  School Buses (manufactured prior to 1977).  Generating activities will remove usable components (i.e., engine, transmission, radiator, front and rear differentials, etc.) for separate turn-in and normal disposal processing.  On a case-by-case basis, the DRMO and the generating activity(ies) will determine who has the responsibility to mutilate.  If neither agree, the generating activity will be responsible for arranging mutilation.  DRMOs receiving buses mutilated by the generating activity may process them for sale as reimbursable/recyclable scrap.  DRMOs performing the mutilation will process the buses for sale as nonreimbursable/nonrecyclable scrap.

(6)  Fire Trucks (P2).  USAF A/S32P-2 Crash Fire Rescue Trucks (NSNs 4210-01-034-7537, and 4210-01-038-4331) are defective due to frame rail cracks.  These trucks will be processed as in paragraph (4), above.

(7)  All Terrain Vehicles.  Three wheeled All Terrain Vehicles may be offered for public sale only after they have been mutilated in a manner to prevent operational use (FPMR 101-45.309-13).

ATT 1
CHAP 4
DoD 4160.21-M

**AIRCRAFT AUTHORIZED FOR SALE FOR COMMERCIAL USE**

**Reference:  Chapter 4, paragraph B2**

The following is a list of aircraft types which, when not specifically modified for combat purposes, may be sold or exchanged for commercial use.  Military Services releasing  these aircraft must indicate on the DTID if the aircraft has been specifically modified for combat purposes. When authorized to be sold or exchanged, the releasing Military Service shall indicate the military design characteristics, if any, which must be removed or demilitarized and, in the latter instance, the method of demilitarization.

| SERIES | DATA PLATE MODEL | MANUFACTURER |
|---|---|---|
| Cargo/Transport | **C1A | Grumman |
| " | **C2A | Grumman |
| " | C-12A thru C-12J | Beech |
| " | C-21A | Learjet |
| " | C-45 | Beech |
| " | C-46 | Curtis |
| " | C-47 | Douglas |
| " | C-54 | Douglas |
| " | **C-97 | Boeing |
| " | C-117 | Douglas |
| " | C-118 | Douglas |
| " | C-121 | Lockheed |
| " | C-123 | Fairchild |
| " | **C-130 | Lockheed |
| " | C-131 | Convair |
| " | **C-135 | Boeing |
| " | **C-137 | Boeing |
| " | **C-140 | Lockheed |
| " | C-141 | Lockheed |
| Helicopter | ** H-1 | Bell |
| " | ** H-2 | Kaman |
| " | ***H3 | Sikorsky |
| " | H-13 | Bell |
| " | H-19 | Sikorsky |
| " | H-21 | Vertol |
| " | H-23 | Hiller |
| " | H-34 | Sikorsky |

4.1-1

**DoD 4160.21-M**

| SERIES | DATA PLATE MODEL | MANUFACTURER |
|---|---|---|
| Helicopter | ** H-37 | Sikorsky |
| " | H-41 | Cessna |
| " | ** H-46 | Boeing Vertol |
| " | ** H-47 | Boeing Vertol |

| | | | |
|---|---|---|---|
| " | ***H-52 | | Sikorsky |
| " | ** | H-53 | Sikorsky |
| " | | H-54 | Sikorsky |
| " | | H-55 | Hughes |
| " | | H-57 | Bell |
| " | ** | H-58 | Bell |
| | | | |
| Observation | O-1 | | Cessna |
| " | | O-2 | Cessna |
| " | ** | OV-1 | Grumman |
| " | *** | OH-6 | Hughes |
| | | | |
| Trainer | | T-1A | Beech |
| " | * | T-28 | N. American |
| " | | T-29 | Convair |
| " | | T-34 | Beech |
| " | | T-39 | N. American |
| " | | T-41 | Cessna |
| " | | T-42 | Beech |
| " | | T-47A | Cessna |
| | | | |
| Utility | | U-1 | DeHaviland |
| " | | U-3 | Cessna |
| " | | U-4 | Aero Design (N. American Rockwell) |
| " | | U-6 | DeHaviland |
| " | | U-8 | Beech |
| " | | U-9 | Aero Design (N. American Rockwell) |
| " | | U-10 | Helio |
| " | | U-11 | Piper |
| " | ** | U-16 | Grumman |
| " | ** | U-17 | Cessna |
| " | ** | U-18 | Ryan |

4.1-2

**DoD 4160.21-M**

| SERIES | DATA PLATE MODEL | | MANUFACTURER |
|---|---|---|---|
| " | ** | U-19 | Convair |
| " | ** | U-20 | Cessna |
| " | | U-21 | Beech |

| | | | |
|---|---|---|---|
| Patrol | ** | P2 | Lockheed |
| " | ** | P3 | Lockheed |
| " | ** | S2 | Grumman |
| " | ** | E1B | Grumman |

*NOTE:  Demilitarization is not required except for demilitarization of lethal/classified equipment onboard the aircraft when sold overseas to U.S. nationals or U.S. entities for import into the United States.  All other sales in overseas areas will be made for scrap and for recovery of parts, regardless of the nationality of the purchaser.

**NOTE: No FAA type certificate is established to date.  These aircraft may be sold as flyable provided the recipient is advised that an FAA type certificate must be obtained prior to obtaining a Standard Airworthiness Certificate.

***NOTE:  Aircraft can only be used for special purpose operations and must meet certain noise requirements (14 CFR, Part 21).

4.1-3

**ATT 2**
**CHAP 4**
**DoD 4160.21-M**

**MARKING OF CLOTHING AND EQUIPAGE FOR TURN IN**

**Reference:  Chapter 4, paragraph B10c**