UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 1 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BROWN HELICOPTER, INC., *et al.* )
)
Plaintiffs, )
)
v. ) Civil Case No. 06-0840 (JR)
)
UNITED STATES DEPARTMENT OF DEFENSE, )
)
Defendant. )

## STIPULATION OF SETTLEMENT AND DISMISSAL

The Parties, Brown Helicopter, Inc. of Pensacola, Florida, United Aeronautical Corp. of North Hollywood, California, Associated Aircraft Mfg. & Sales, Inc. of Fort Lauderdale, Florida, Dixie Air Parts Supply, Inc. of San Antonio, Texas, Firehawk Helicopters, Inc. d/b/a Brainerd Helicopters of Leesburg, Florida, and Alamo Aircraft, Ltd. of San Antonio, Texas (Plaintiffs), and the U.S. Department of Defense, represented by and through the Defense Reutilization and Marketing Service (DRMS) (Defendant), by and through their respective Counsel, hereby stipulate and agree, as follows:

1. The Parties do hereby agree to settle and compromise the above-entitled action under the terms and conditions set forth herein.

2. This Stipulation of Settlement shall represent full and complete satisfaction of any and all claims arising from the allegations set forth in any complaint filed in this action – which claims seek declaratory and injunctive relief for actions by DRMS alleged to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, specifically DRMS's requirement that 27,000,000 pounds of DEMIL B and Q scrap aircraft property be delivered at Davis-Monthan Air Force Base (AFB) and sold by Government Liquidation under DRMS Sales Contract 99-4001-0004, Event 6079, and be completely mutilated with no aircraft property available for use

for its originally intended purpose – including full and complete satisfaction of all claims for costs and attorneys fees that have been, or could be, made in this case. In particular, this Stipulation of Settlement shall resolve all claims for attorneys' fees and costs incurred in connection with any administrative process, the District Court litigation process, and any other proceedings involving the claims raised in these actions, or that could have been raised in association with this action.

3.   The Parties agree to United States Department of Defense (DoD) disposition of the 27,000,000 pounds of aircraft scrap by a sales process whereby:

   a.   DRMS (a) solicits bids for the right to purchase usable commercial parts from the stricken airplanes having a demil code of A, B, or Q that is non-Flight Safety Critical Aircraft Part (FSCAP) designated, non-Critical Safety Item (CSI) designated and could not be used on an F-14 aircraft; (b) provides for usable parts removal; (c) validates the part's status as salable to the public in usable form as determined by its DoD assigned demilitarization code; and (d) sells the remaining airplane remnant scrap metal with total destruction as a condition for passage of title.

   b.   DRMS will offer the usable parts of one platform to the public with the requirement that parts removal will be conducted by DoD at purchaser's expense. The process consists of a sale to the highest responsible bidder for the right to purchase aircraft parts identified to DoD by the sales contractor in an inspection prior to bidding. The type and amount of property to be removed from the aircraft by DoD will be determined exclusively by the contractor after a two-day inspection period.

   c.   The planes will be offered in groups of five from aircraft of the same platform. A minimum bid will be required, which will be calculated as the amount required to reimburse Aerospace Maintenance And Regeneration Group (AMAARG) (a civilian field activity/agency of the U.S. Air Force) for the cost of safety inspection of the aircraft, the cost

2

of escort during the inspection period, and repair costs of aircraft modules (frames used to support the aircraft as they sit on the ground) as necessary. The cost of inspection and escort during the two-day period is $85.83 per hour through September, 2007 and $97.13 per hour thereafter. Of the 280 aircraft currently identified for disposal, about 10% have condemned modules requiring repair. These repairs are required to ensure the safety of personnel accessing the aircraft for inspection. The number of modules per airframe range from 3 to 10. The estimated repair cost per module is $1,162. DoD represents that it will attempt to offer first those planes where module repairs are minimal or not required. DoD does not represent that the minimum bid for each type of platform will be the same in every sale. The purchaser's bid will include both the right to select the parts for removal by DoD and the purchase of the parts themselves after verification by DoD.

  d.  AMAARG will conduct the parts removal at a cost to the buyer of $95 per hour, which will be paid by the purchaser separately from the bid. The amount and complexity of parts removal will determine this cost. Title to the aircraft and parts during the parts recovery process remains in the government. The purchaser will submit a list to the government identifying those items it wishes recovered. The list must include noun name, national stock number and part number. The usable aircraft parts removed will be segregated and all items subsequently verified by the Agency to ensure the items selected are not FSCAP, CSI, or demilitarization-required and are otherwise safe to remove and sell by the purchaser.

  e.  The purchaser will be permitted to take title to and remove the property once verification is complete, with DoD as the final authority on verification. DoD retains the right to prohibit removal of parts where the demilitarization code or FSCAP or CSI status cannot be determined. Such cases include where the sales contractor cannot properly identify

3

the item by NSN, serial number, or parts number to allow for demilitarization code verification by DoD. The aircraft remnant after parts removal will be sold as scrap, with destruction of the property being a condition of sale, since the sale of any remaining property is either prohibited by DoD, or it is not economically viable to recover any remaining usable property.

4. The Parties will bear their own fees and costs, including attorneys' fees in this matter.

5. Plaintiffs forever waive, release and abandon any and all claims against Defendant, the United States, the Federal government, DoD, DRMS, their successors or assigns, and any Bureaus, Agencies or officials within DoD and against other Federal agencies and their respective employees and agents concerning the sale of the 27,000,000 pounds of excess aircraft property in this case. Defendant forever waives, releases and abandons any and all claims and defenses against Plaintiffs which could have been alleged in this action.

6. The parties agree that: (1) each party and counsel for each party to this Stipulation of Settlement have had an opportunity to review and to revise this settlement document and, accordingly, the general rule of construction (that any ambiguities are to be resolved against the drafting party) will not be employed in any interpretation of this Stipulation of Settlement; (2) if any part, term, or provision of this Stipulation of Settlement shall, to any extent, be declared unenforceable or illegal by a court of competent jurisdiction, the remainder of this Stipulation of Settlement Agreement shall not be affected thereby, and each part, term, or provision of this Stipulation (including, but not limited to, any enforceable and legal portion of the challenged part, term, or provision) shall be valid and enforceable to the fullest extent permitted by law; (3) to the extent that a court of competent jurisdiction determines that one or more provisions of the Stipulation of Settlement is vague, ambiguous, or in conflict, the Parties agree that the court should construe or apply the provisions so that the Parties' intent is effectuated; and (4) any subsequent

change in Federal law or regulation, or policy of the DoD which may effect this settlement, to include a delay or prohibition of sale of DEMIL B and Q parts by DoD, will not be deemed a breach of this settlement agreement.

7. This Stipulation of Settlement shall not constitute an admission of liability or fault on the part of Defendant, its past or present agents, servants, or employees, and is entered into by all parties for the sole purpose of compromising disputed claims and avoiding the expenses and risks of further litigation.

8. This Stipulation of Settlement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

9. The parties agree that the specific terms of this Stipulation of Settlement will not be used as evidence or otherwise in any pending or future civil or administrative action against or involving Plaintiffs, Defendant, DoD, or any department, agency or instrumentality of the United States, except that the parties may use the terms to enforce this settlement.

10. Execution of this Stipulation of Settlement by counsel for the Plaintiffs and by counsel for the Defendant shall constitute a dismissal of this case with prejudice, effective upon approval of the Court, pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), provided that this Court shall retain jurisdiction to oversee compliance with the terms of this Stipulation of Settlement and Dismissal. See Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994).

11. The parties agree that the terms expressly recited herein represent the entire Stipulation of Settlement and that there are no other terms or conditions to this stipulation except those expressly stated herein. This Stipulation of Settlement may not be altered, modified, withdrawn, waived, rescinded or supplemented except by written instrument executed by duly authorized representatives of both parties.

12. The parties agree to cooperate fully and to execute any and all documents, or take any other steps, necessary to implement and effectuate the provisions of this Stipulation of Settlement. This Stipulation of Settlement may be executed in counterparts, which may include photocopies or facsimile transmissions of the original but all of which together shall constitute one and the same instrument. Photocopies of or facsimile transmissions of signatures shall be deemed original signatures and shall be fully binding upon the parties to the same extent as original signatures.

So Agreed.

_____
John J. Fausti
D.C. Bar No. 349811
Fausti & Associates, LLC
4301 Connecticut Avenue, N.W., Suite 453
Washington, D.C. 20008
(202) 237-0505 (phone)
(202) 237-7566 (fax)

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

Kevin R. Garden, Esq.
D.C. Bar No. 426745
The Garden Law Firm P.C.
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
(703) 535-5565 (phone)
(703) 997-1330 (fax)

Counsel for the Plaintiff

Date: 9/12/07

By: _____
    Neil Watters
    Chief, Sales Office
    Disposition Management, DRMS

Gregory Gusching
Assistant Counsel
DRMS

Counsel for the Defendants

Date: _____

So Ordered.

On this ____ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE

6

12. The parties agree to cooperate fully and to execute any and all documents, or take any other steps, necessary to implement and effectuate the provisions of this Stipulation of Settlement. This Stipulation of Settlement may be executed in counterparts, which may include photocopies or facsimile transmissions of the original but all of which together shall constitute one and the same instrument. Photocopies of or facsimile transmissions of signatures shall be deemed original signatures and shall be fully binding upon the parties to the same extent as original signatures.

So Agreed.

John J. Fausti
D.C. Bar No. 349811
Fausti & Associates, LLC
4301 Connecticut Avenue, N.W., Suite 453
Washington, D.C. 20008
(202) 237-0505 (phone)
(202) 237-7566 (fax)

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

Kevin R. Garden, Esq.
D.C. Bar No. 426745
The Garden Law Firm P.C.
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
(703) 535-5565 (phone)
(703) 997-1330 (fax)

Counsel for the Plaintiff

Date: September 17, 2007

By: _____
Neil Watters
Chief, Sales Office
Disposition Management, DRMS

Gregory Gusching
Assistant Counsel
DRMS

Counsel for the Defendants

Date: September 17, 2007

So Ordered.

On this 19 day of September, 2007.

_____
UNITED STATES DISTRICT JUDGE